******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D'AURIA, J., with whom ROBINSON, C. J., joins, concurring in part and concurring in the judgment. I agree with and join parts II through VI of the plurality opinion. Respectfully, however, I do not agree with the conclusion in part I of the plurality opinion, that the term "municipal clerk" in General Statutes § 9-140b (c) (2) plainly and unambiguously authorizes the municipal clerk *and* any of the clerk's "designees" to retrieve absentee ballots from secure drop boxes. Rather, I believe that the statute's plain and unambiguous language authorizes only the municipal clerk and, if the requirements of General Statutes § 7-19 are satisfied, any appointed assistant clerks, to retrieve absentee ballots from the drop boxes. Nonetheless, I agree with the plurality that the record before us regarding who retrieved how many absentee ballots does not permit a conclusion that any error affected the reliability of the result of the November, 2021 election for mayor of the city of West Haven. I therefore respectfully concur in part.

My main disagreement with the plurality concerns its application of General Statutes § 1-2z.[1] Although the plurality recites this statute when undertaking to construe the term "municipal clerk," I do not agree that the plurality has properly considered both the language of § 9-140b (c) (2) and its relationship to other related statutes. Specifically, the plurality holds that the phrase "municipal clerk" means the municipal clerk and any designee of the clerk, despite the fact that the word "designee" does not appear anywhere in the governing statutes to describe anyone whom the clerk may designate to perform any task, let alone to retrieve absentee ballots from drop boxes.[2] The plurality mainly bases its conclusion on its contention that, because so many other statutes that require the municipal clerk to undertake certain duties regarding the absentee ballot procedure only use the phrase "municipal clerk," without explicitly authorizing others to act on his or her behalf, it would be " 'absurd or unworkable' " to require the clerk to personally "carry out the entire absentee ballot procedure," which "would grind the administration of an election nearly to a halt." The plurality relies on §§ 7-19 and 9-140b (d) to support its conclusion "that the legislature contemplated that the municipal clerk [would] delegate tasks to her designees and is authorized to do so."

In my view, the plurality does not sufficiently consider the plain and unique language of each of these statutes and provisions. I believe that an appropriate § 1-2z analysis should proceed as follows. Section 9-140b (c) (2) requires "the municipal clerk [to] retrieve from the secure drop box . . . each such [absentee] ballot deposited in such drop box." General Statutes § 9-1 (g) defines "[m]unicipal clerk" as "the clerk of

a municipality . . . ." General Statutes § 9-1a defines "municipal clerk" or "clerk of the municipality" as "the town clerk in or for the municipality to which reference is made, unless otherwise provided by charter or special act." I agree with the plurality that these definitions "[appear] to require the municipal clerk to personally retrieve the absentee ballots from each secure drop box."

As to the plurality's concern that requiring the municipal clerk personally to carry out nearly the entire absentee ballot procedure might be impossible, I believe that reading the text of those statutes (including § 9-140b (c) (2)) and their "relationship to other statutes" leads to a conclusion different from that of the plurality about how the legislature considered this problem and accommodated it. In my view, two statutes in particular manifest this forethought. First, regarding the clerk's duties generally, § 7-19 allows the town clerk to "*appoint* assistant town clerks, who, having taken the oath provided for town clerks, shall, in the absence or inability of the town clerk, have all the powers and perform all the duties of the town clerk." (Emphasis added.) Second, regarding absentee ballots specifically, § 9-140b (d) provides in relevant part: "No person shall have in his possession any official absentee ballot or ballot envelope for use at any primary, election or referendum *except* . . . any person authorized by a municipal clerk to *receive and process official absentee ballot forms* on behalf of the municipal clerk . . . ." (Emphasis added.)

The plurality cites to the latter provision as support for its contention that "[§] 9-140b itself suggests that someone other than the municipal clerk properly could receive and process absentee ballots." When read in tandem, I draw a different conclusion than does the plurality from the plain language of §§ 7-19 and 9-140b about who may "perform [the duty]" of the town clerk under § 9-140b (c) (2) of "retriev[ing] from the secure the drop box[es] . . . each such ballot deposited in such drop box."

The plurality, without citation, simply asserts that "[r]etrieving absentee ballots from the drop boxes certainly constitutes 'receiv[ing] and process[ing]' absentee ballots." Such effortless equivalence of language is possible, but not necessary or even probable, under our usual rules of interpretation. In fact, conventionally, we presume that the legislature's use of "different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings . . . ." (Internal quotation marks omitted.) *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 609, 830 A.2d 164 (2003).

The words "retrieve" and "receive" are not defined in this statutory scheme. Under their common dictionary definitions, "retrieve" means "[t]o get back . . . [t]o

find and carry back"; American Heritage Dictionary (4th Ed. 2007) p. 1188; whereas "receive" means "[t]o acquire or get something; be a recipient"). Id., p. 1161. I draw from these definitions that the legislature intended for only the municipal clerk or, if the requirements of § 7-19 are satisfied, any "appoint[ed]" and sworn assistant clerks to "retrieve" (i.e., go get) absentee ballots from the drop boxes under § 9-140b (c) (2). In contrast, "any person authorized by [the] municipal clerk" may "receive and process" (i.e., be given and then process) the ballots. General Statutes § 9-140b (d). There would be no absurd or unworkable result by interpreting "municipal clerk" to mean only the municipal clerk herself or himself and the clerk's appointed assistant clerks if the "absence or inability" requirement of § 7-19 is satisfied. As the plurality contends, and it is beyond cavil, the municipal clerk has many competing duties, especially on election day, and, thus, the "absence or inability" standard would appear to be easily met to permit assistant clerks to perform those duties. Where there are particular grants of authority for the clerk to authorize others to perform functions of that office, such as in § 9-140b (d), the clerk of the municipality finds additional relief. See *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013) ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted; internal quotation marks omitted)).

Distinguishing between retrieving absentee ballots and undertaking other functions with those ballots is hardly without its rationality. In many contested elections (including this one), the custody of absentee ballots—from the time they leave the voter's hands to the time there are witnesses to their processing—is often the center of controversy. See, e.g., *Lazar* v. *Ganim*, 334 Conn. 73, 78, 220 A.3d 18 (2019) (voters contested election results based on claim that defendants improperly handled absentee ballots in violation of § 9-140b); *Keeley* v. *Ayala*, 328 Conn. 393, 407, 179 A.3d 1249 (2018) (contesting election results based on claim involving whether party official or candidate could order police officer to retrieve absentee ballots from electors and to deliver them to town clerk). Because of the proliferation of absentee voting during the recent COVID-19 pandemic; see *Fay* v. *Merrill*, 338 Conn. 1, 8–9, 256 A.3d 622 (2021) (noting " 'a significant increase in the use of absentee ballots' " due to pandemic and broadening of authorization for who may request absentee ballot to include " 'COVID-19' "); and at a time when the legislature has amended legislation regarding absentee voting (that may continue to exist long after the pandemic is over); see Public Acts 2022, No. 22-2, § 1 (effective April 8, 2022), codified at General Statutes § 9-135 (a); it seems to me entirely sensible that the legislature might want

the municipal clerk or a sworn assistant clerk—not just "any person authorized" by the clerk—to retrieve those ballots. If this is an undue burden, the legislature can change it.

Thus, although I agree with the plurality that § 9-140b (d) is plain and unambiguous, I believe that the plurality defines the phrase "municipal clerk" too broadly. This phrase is limited to the municipal clerk himself or herself, and, if § 7-19 is satisfied, the clerk's appointed assistant clerks. Therefore, I conclude that there was error in the absentee ballot retrieval procedure used in the election at issue because at least some evidence indicates that someone other than the municipal clerk or, assuming that the requirements of § 7-19 were satisfied, an appointed assistant clerk retrieved absentee ballots from some of the drop boxes. But it is not clear from the record before this court that this error had any effect on the election's outcome.

Accordingly, I respectfully concur in part.

[1] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[2] General Statutes § 9-140b (a) (1) (B) does refer to, and § 9-140b (b) does define, "designee," but only in reference to someone whom an absentee ballot applicant may designate to assist an absentee ballot applicant in voting. There is no reference in § 9-140b to a designee of the municipal clerk, although there was prior to the passage of Public Acts, Spec. Sess., June, 2021, No. 21-2, § 102. See General Statutes (Rev. to 2021) § 9-140b (c) (2) ("the municipal clerk shall . . . (B) if the drop box is located outside a building other than the building where the clerk's office is located, arrange for the clerk or the clerk's designee to be escorted by a police officer during such retrieval").

In the absence of ambiguity, however, a proper textual construction of the statute under § 1-2z does not refer to repealed language, and the plurality does not contend that it does. See *Soto* v. *Bushmaster Firearms International, LLC*, 331 Conn. 53, 146, 202 A.3d 262 (vetoed bills and repealed statutes may be considered under § 1-2z to determine meaning of statute only when plain language of statute is ambiguous), cert. denied sub nom. *Remington Arms Co., LLC* v. *Soto*, U.S. , 140 S. Ct. 513, 205 L. Ed. 2d 317 (2019).